UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TANYA BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:24-cv-12408-JEK |
| ) | |
| JETBLUE AIRWAYS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

**KOBICK, J.**

Plaintiff Tanya Brown filed this action against her former employer, defendant JetBlue Airways Corporation, alleging that it unlawfully terminated her employment because of her disabilities. Brown's initial complaint asserted claims of disability discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"). She now moves to amend that complaint to revise certain allegations, remove her Title VII claims, and add claims arising under the Massachusetts invasion of privacy statute, M.G.L. c. 214, § 1B, and the Massachusetts Wage Act, M.G.L. c. 149, § 148.

JetBlue opposes Brown's motion only with respect to the proposed state law claims. In JetBlue's view, it would be futile to allow an amended complaint with the invasion of privacy and Wage Act claims because those claims are insufficiently pleaded and are preempted by the Railway Labor Act, 45 U.S.C. §§ 151-188, which regulates relations between labor and management in the railway and airline industries. Agreeing that these state law claims would be preempted, the Court will grant in part and deny in part Brown's motion for leave to file an amended complaint. The

amended complaint will be permitted to the extent it revises Brown's initial allegations and removes her Title VII claims, but Brown may not add the invasion of privacy and Massachusetts Wage Act claims.

## BACKGROUND

The pertinent facts, as alleged in the proposed amended complaint, are as follows. *See Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 40 (1st Cir. 2022).

Brown worked as a flight attendant for JetBlue from 2011 until July 2023. ECF 35-3, ¶¶ 9, 47. She suffers from post-traumatic stress disorder, depression, bipolar disorder, attention deficit hyperactivity disorder, and anxiety. *Id.* ¶ 10. In March 2022, Brown took a six-month bereavement leave after her brother's passing. *Id.* ¶¶ 12-13. In December 2022, three months after she returned to work, another of Brown's brothers passed away and Brown again went on leave. *Id.* ¶¶ 13, 16. She returned to work on January 30, 2023, and her first shift on a flight was scheduled for February 9. *Id.* ¶ 17. On February 7, Brown tested positive for COVID-19 and called out sick for five days. *Id.* ¶¶ 18-19. On February 16, a supervisor informed Brown that she was removed from all upcoming flight itineraries out of concern for her wellbeing. *Id.* ¶ 20. She was instructed to submit a fitness-for-duty medical evaluation with a third-party business partner, Harvey Watt & Co., and to waive her rights under the Health Insurance Portability and Accountability Act ("HIPAA") by signing a form authorizing the release of her health information to JetBlue and Harvey Watt. *Id.* ¶¶ 22-23.

Brown was unwilling to permit JetBlue access to her private medical information. *Id.* ¶ 25. She agreed to undergo a medical evaluation with Harvey Watt but refused to sign the medical authorization form as to JetBlue. *Id.* ¶ 27. She also refused to sign a form that would authorize only Harvey Watt to receive her medical information but allow JetBlue to access the information

through Harvey Watt. *Id.* ¶ 36. JetBlue would not permit Brown to undergo the medical evaluation until she allowed it to access her medical records and waived her HIPAA rights. *Id.* ¶ 28. Despite providing a doctor's note and a letter from a union representative vouching for her ability to return to work, Brown was still required to grant JetBlue access to her medical records in order to return to work. *Id.* ¶¶ 25, 38, 42.

Because of her continued refusal to authorize the release of her medical information, JetBlue changed Brown's leave status from paid to unpaid in June 2023, and then fired her on July 13, 2023. *Id.* ¶¶ 41, 46-47. To support her termination, JetBlue pointed to provisions in the Crewmember Blue Book and Inflight Blue Book Supplement relating to insubordination, as well as Article 32 of the collective bargaining agreement. *Id.* ¶ 47. That Article states: "When [JetBlue] has reasonable cause to question an [inflight crewmember's] fitness for duty, a medical evaluation may be required." *Id.* Brown disputes the validity of JetBlue's stated reasons for discharging her. *Id.* ¶ 48.

Brown initially filed suit against JetBlue in the United States District Court for the Eastern District of Louisiana in April 2024, asserting claims of discrimination and retaliation under the ADA, 42 U.S.C. §§ 12101 *et seq.*, and Title VII, 42 U.S.C. §§ 2000e *et seq.* ECF 1, ¶¶ 107-35. After the case was transferred to this Court, Brown moved for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). ECF 19, 35. Her proposed amended complaint would maintain the ADA claims, exclude the Title VII claims, and include four new claims under M.G.L. c. 214, § 1B and the Massachusetts Wage Act, M.G.L. c. 149, § 148. ECF 35-3, ¶¶ 107-68. JetBlue opposes Brown's motion only with respect to the new state law claims. ECF 39, at 2.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While "[t]he rule reflects a liberal amendment policy," the Court "enjoys significant latitude in deciding whether to grant leave to amend." *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008). "Grounds for denial include . . . 'futility of amendment.'" *Id.* at 56 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if it is either frivolous or contains some fatal defect," which typically "means that 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Amyndas Pharms.*, 48 F.4th at 40 (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). "Whether a proposed amendment is futile is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Id.* (quotation marks omitted).

## DISCUSSION

JetBlue contends that the addition of Brown's proposed claims under M.G.L. c. 214, § 1B and the Massachusetts Wage Act, M.G.L. c. 149, § 148, would be futile. Those state law claims, JetBlue maintains, are insufficiently pleaded in the proposed amended complaint or, alternatively, are preempted by the Railway Labor Act ("RLA"). Brown counters that the claims are adequately alleged and not preempted by the RLA because they are independent of the collective bargaining agreement ("CBA").

The RLA, which applies to the airline industry, "sets up a mandatory arbitral mechanism to handle disputes 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994) (quoting 45 U.S.C. § 153). These so-called minor disputes exist "whenever the challenged conduct is 'arguably justified' either by the text and negotiating history

4

of the CBA or by the past practices of the parties." *Air Line Pilots Ass'n, Int'l v. Guilford Transp. Indus., Inc.*, 399 F.3d 89, 93 (1st Cir. 2005) (quoting *Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 307 (1989)). Because such disputes "must be resolved only through the RLA mechanisms, . . . a determination that [a party's] complaints constitute a minor dispute would pre-empt his state-law actions." *Hawaiian Airlines*, 512 U.S. at 253. "Given that a state law claim requiring interpretation of the CBA is preempted, the key question becomes whether resolution of a dispute 'hinges upon' such interpretation." *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 11 (1st Cir. 2001) (quoting *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997)).

I. **Invasion of Privacy Claims.**

Brown first seeks to add claims alleging that JetBlue invaded her privacy and unlawfully terminated her employment in violation of M.G.L. c. 214, § 1B. Section 1B prohibits interferences with privacy that are "unreasonable, substantial or serious." M.G.L. c. 214, § 1B. The statute was not, however, "intended to prohibit serious or substantial interferences which are reasonable or justified." *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 518 (1991). To determine if Section 1B has been violated when medical information is involved, courts balance the employee's privacy and confidentiality interests "against the employer's need for the medical information," *Bratt v. Int'l Bus. Machs. Corp.*, 392 Mass. 508, 523 (1984), prohibiting the disclosure of personal facts only "'when there exists no legitimate countervailing interest,'" *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 383 (2005) (quoting *Bratt*, 392 Mass. at 518).

Brown's proposed invasion of privacy claims are preempted by the RLA because they turn on an interpretation of the CBA. The proposed amended complaint alleges that, after Brown refused to give JetBlue access to her medical information, JetBlue justified her termination in part by pointing to Article 32 of the CBA. ECF 35-3, ¶ 47. Article 32 states that "a medical evaluation

5

may be required" when JetBlue "has reasonable cause to question" a crewmember's "fitness for duty." *Id.* Whether JetBlue's demand of Brown was reasonable or involved a legitimate business interest under Section 1B, as it argues, or was illegitimate and pretextual, as Brown asserts, "hinges on" an interpretation of Article 32. *Adames*, 258 F.3d at 11 (quotation marks omitted). Specifically, to determine whether JetBlue's insistence on a fitness-for-duty medical evaluation was justified,[1] the Court would have to interpret the term "reasonable cause" in Article 32. Similarly, to determine whether JetBlue's insistence on a HIPAA waiver from Brown was justified, the Court would have to assess whether, based on the text of the CBA or past practice, the term "medical evaluation" in Article 32 encompasses a HIPAA waiver. Assessment of Brown's proposed invasion of privacy claim would, accordingly, hinge on interpretation of the terms of the CBA. *See Carmack v. Nat'l R.R. Passenger Corp.*, 486 F. Supp. 2d 58, 80 (D. Mass. 2007) (a "claim of invasion of privacy [was] preempted by the RLA" because "whether or not [the employer] had the right to demand the psychiatric evaluation and psychological testing 'hinge[d] upon' an interpretation of the CBA"); *cf. Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111, 119 (1st Cir. 1988) (29 U.S.C. § 185 preempted plaintiff's invasion of privacy claims challenging a drug testing policy where those claims "appear[ed] inseparable from an interpretation of what is or is not 'reasonable' under the labor contract").[2]

Brown nonetheless contends that the dispute does not hinge on the CBA because its focus is "the unauthorized release of private health information" rather than the fitness-for-duty exam

---

[1] Brown claims that JetBlue's request for a medical evaluation was not justified because she gave JetBlue a doctor's note stating that she could return to work without restrictions. ECF 35-3, ¶¶ 25, 59, 61, 80, 82, 163.

[2] Claims of preemption under the RLA are governed by a standard that "is virtually identical to the pre-emption standard . . . employ[ed] in cases involving § 301 of the [Labor-Management Relations Act], 29 U.S.C. § 185." *Hawaiian Airlines*, 512 U.S. at 260.

mentioned in Article 32 of the CBA. ECF 43, at 2. But the parties' disagreement concerns, among other things, whether the term "medical evaluation" in Article 32 authorized JetBlue to require Brown to release her medical information. *See* ECF 35-3, ¶¶ 26, 28, 39, 45, 47-48. Because the resolution of Brown's proposed invasion of privacy claims would depend on whether JetBlue had a legitimate reason to demand access to her medical information, the dispute is not independent of the CBA, and the RLA preempts the invasion of privacy claims. Inclusion of those claims in an amended complaint would, accordingly, be futile.

**II.     Massachusetts Wage Act Claims.**

Brown also seeks to add claims for unpaid wages and unlawful deductions under the Massachusetts Wage Act. The Wage Act requires employers to "pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week." M.G.L. c. 149, § 148. Brown alleges that JetBlue violated the Act by "denying her access to wages she would have earned" had she not been removed from duty and by "unlawfully deducting wages and benefits owed" to her in changing her paid leave to unpaid leave. ECF 35-3, ¶¶ 153, 161.

Both of Brown's proposed Wage Act claims are entangled enough with CBA interpretation that they would stand preempted. First, Brown alleges that her "inability to work [flight shifts] and earn wages during this period was a direct result of [JetBlue's] unlawful actions and its refusal to allow [her] to return to work without waiving her privacy rights." *Id.* ¶ 155. As with the proposed claims under M.G.L. c. 214, § 1B, resolving this claim of unpaid wages requires interpretation of the CBA because it hinges on whether Article 32 or any other provision of the CBA authorized JetBlue to demand that Brown waive her HIPAA protections. *See Adames*, 258 F.3d at 13-16 (RLA preempted plaintiffs' wage claims because they could not "be resolved independently of the

CBA"). Second, Brown alleges that JetBlue "failed to provide any legal basis or justification for the reclassification of [her] leave, as [she] had complied with all medical requirements by submitting a doctor's note confirming her fitness to return to work." *Id.* ¶ 163. Deciding whether JetBlue's reclassification of Brown's leave from paid to unpaid would similarly require an interpretation of the CBA to assess whether, in light of the note from Brown's doctor, the CBA authorized JetBlue's reclassification of Brown and her consequent loss of potential wages and benefits.

Brown nevertheless argues that her Wage Act claims are not preempted, as "[c]ourts have consistently held that wage claims are independent of CBAs when they involve statutory rights." ECF 43, at 3. The only case that Brown cites, however, does not support her position. In *Cavallaro v. UMass Memorial Healthcare, Inc.*, the First Circuit concluded that 29 U.S.C. § 185 preempted the plaintiffs' Wage Act claim because "determining what (if anything) is owed . . . depends at least arguably on interpretations and applications of the CBA." 678 F.3d 1, 8 (1st Cir. 2012). It also recognized that this wage claim is "under *Adames* preempted by entanglement with CBA interpretation." *Id.* at 7-8; *see Adames*, 258 F.3d at 16 (plaintiffs' statutory wage claims were preempted by the RLA where "the factual predicates triggering the applicability of the Commonwealth laws at issue require[d] an interpretation of the [CBA]"). Where, as here, claims "rest at bottom on the notion that plaintiffs have not been paid the wages they are owed," those claims depend "upon what the CBA provides, . . . even if these amounts were in turn altered or enlarged by state statutory provisions that cannot be overridden by the CBAs." *Cavallaro*, 678 F.3d at 5. Brown's proposed Massachusetts Wage Act claims are, accordingly, preempted, and inclusion of the claims in an amended complaint would be futile.

8

## CONCLUSION AND ORDER

For the foregoing reasons, Brown's motion for leave to file an amended complaint is DENIED as to her proposed addition of the invasion of privacy and Massachusetts Wage Act claims but is otherwise GRANTED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: April 30, 2025